In re BERKSHIRE FOODS,
INC., Debtor.

No. 01 B 26478.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 10, 2003.

Brian J. Hunt, Esq., Williams, Montgomery & John, Ltd., James M. Rozak, Wiedner & McAuliffe, Ltd., Chicago, IL, for creditor.

Jeoffrey S. Goodman, Esq., Foley & Lardner, Chicago, IL, for debtor.

### MEMORANDUM OPINION ON MOTION OF ZURICH NORTH AMERICA TO VACATE "AGREED ORDER" OF SEPTEMBER 9, 2003

JACK B. SCHMETTERER,
Bankruptcy Judge.

In this Chapter 11 Bankruptcy case, the American Motorist Insurance Company ("AMIC") filed a large claim asserted to be for administrative expenses under 11 U.S.C. § 503 ("Claim"). The Debtor has possible insurance coverage for that Claim, written by Zurich North America ("Zurich"). While a Zurich representative was informed of the pending Claim, Debtor did not tender to Zurich a demand for defense of the Claim. Instead, Debtor entered into an Agreement with AMIC whereby it conceded that claimant AMIC was to prevail entirely on its claim but could collect only from Zurich on the insurance policy, not from the Debtor that has little, if anything, in assets to pay the claim ("Agreement").

Pursuant to the Agreement, on September 9, 2003, Debtor submitted an "Agreed Order" approved that day allowing the AMIC claim under 11 U.S.C. § 503, and providing for judgment in the amount of $859,494 ("Order").

While Zurich had been earlier informed about pendency of the Claim, it was not given notice of the motion by AMIC and Debtor concerning the Order, or notice of the related Agreement.

Based on the Order, AMIC caused a garnishment summons to be served on Zurich to reach the insurance proceeds. Zurich had not in any way agreed to entry of the Order. On October 1, 003, it filed a motion for leave to intervene in this bankruptcy case and "to reconsider and to vacate" the September 9, 2003 Order. The motion to intervene was allowed.

The motion "to reconsider and vacate" is treated as one to alter or amend judgment under Rule 9024 Fed.R.Bankr.P. (incorporating Rule 60 Fed.R.Civ.P.), alternatively under Rule 3008 Fed.R.Bankr.P. as a motion for reconsideration of the Order allowing claim.

For reasons discussed below, Zurich was and is a party in interest entitled to notice of entry of the Order affecting it, but was denied such notice. Therefore, pursuant to Rule 60(b)(1) and (6) Fed.R.Civ.P. [Rule 9024 Fed.R.Bankr.P.], and alternatively under Rule 3008 Fed.R.Bankr.P., the Order of September 9, 2003 will by separate order be vacated, Court approval of the Agreement rescinded, and the claim of AMIC reinstated.

### UNDISPUTED FACTS

The briefs did not indicate a factual dispute and no party requested an opportunity to offer evidence. Therefore, the ruling herein rests on undisputed facts set forth in the briefs which are recited herein.

On July 8, 2003, AMIC filed a Petition herein claiming Administrative Expenses for its post-petition administrative claim pursuant to 11 U.S.C. § 503.

The movant Zurich had earlier issued a liability insurance policy to the Debtor Berkshire Foods, Inc. ("Berkshire") which

was allegedly effective during the time frame mentioned in the Claim and allegedly insuring against the AMIC Claim.

In its claim, AMIC alleged that its insured, Rymer Foods, Inc. ("Rymer"), was a tenant in a building owned by debtor-in-possession Berkshire and that, as the landlord, the debtor-in-possession had a duty to maintain and repair the leased premises. The Claim alleged entitlement to award of an administrative expense in the amount of $859,494 resulting from an order by the United States Department of Agriculture requiring that Rymer cease business operations due to failure of Berkshire to maintain and repair the leased premises.

■ On September 9, 2003, the so-called "Agreed Order" was approved herein, which was "subject to the terms and conditions set forth in the Agreement entered into by the parties ...," thereby allowing the Petition claiming administrative expenses and entering "judgment" for those administrative expenses in the amount of $859,494. (A claim not agreed to becomes a contested proceeding and all procedural steps of a lawsuit may follow, including a judgment against the debtor. Rule 9014 Fed.R.Bankr.P.)

Zurich was given no prior notice in connection with presentation of the Order entered September 9, 2003, and no prior notice of the accompanying Agreement whereunder only Zurich insurance was to pay the Claim.

On September 11, 2003, counsel for AMIC forwarded a copy of the September 9, 2003 Order to Zurich together with correspondence advising that AMIC had instituted garnishment proceedings against the Zurich policy in an effort to enforce the Order and judgment included therein.

## DISCUSSION

### I. ZURICH IS A PARTY WITH A PECUNIARY INTEREST AND A RIGHT TO BE HEARD IN THIS PROCEEDING

■ Rule 2018 Fed.R.Bankr.P. provides for permissive intervention on behalf of any interested party generally or with respect of any specified matter:

In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

By earlier Order herein, Zurich was given leave to intervene in this bankruptcy case in connection with the Order.

AMIC is actively seeking to enforce the judgment and instituted garnishment proceedings against the Zurich policy.

Zurich at all times mentioned herein had and has a pecuniary interest in this proceeding as it related to entry and enforcement of the September 9, 2003 Order and its alleged relation to proceeds of the Zurich policy, and therefore had a right to prior notice of the Agreement and Order that was intended to and did give rise to a claim against its insurance proceeds. 11 U.S.C. § 1109(b); *In re James Wilson Assoc., 965 F.2d 160, 169 (7th Cir.1992)* (holding that a party in interest who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which the interest pertains.) However, neither Debtor nor AMIC served notice of the motion to enter the "Agreed Order" and for approval of the "Agreement" affecting Zurich.

It appears that Zurich was earlier informed about the pendency of the AMIC claim and sent a copy of that Claim. It had every right to seek to intervene and

defend at that point. It did not, apparently because the Debtor did not formally tender defense of the Claim to it. If Debtor had tendered the defense to Zurich and if Zurich had then denied coverage or had failed or refused to defend, it might have thereby waived its right to complain about the Order in issue, *Central Mutual Insurance Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill.Dec. 826, 571 N.E.2d 806 (1991), but that did not happen. Debtor disregarded its right and needs to tender the defense and simply went ahead to enter into the Agreement and have the "Agreed Order" entered affecting Zurich but without notice to Zurich.

This history typifies an all too frequent effort in bankruptcy cases wherein parties "A" and "B" settle between them by taking something away from "C," sometimes attempted by overnight fax notice but here not accompanied by any notice at all. The Debtor and AMIC denied Zurich due process rights to notice certainly required by U.S. Const. Amend. V as well as Rule 2002 Fed.R.Bankr.P.

While the wisdom of the disregard by Zurich of possible consequences that could arise from standing aloof from these proceedings prior to entry of the Order could be questioned, in the absence of formal tender by Debtor of defense there was no waiver of its policy duty to defend, *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 144, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999), and therefore no waiver of its right to notice of the motion to enter the Order, and no waiver of its right to object to the Agreement.

### A. *Zurich's Motion to Intervene was Timely*

■ AMIC argues that Zurich's petition to intervene was untimely. It cites to Rule 24(b)(2) Fed.R.Civ.P. for this proposi-tion, but Rule 24 [Rule 7024 Fed. R.Bankr.P.] is inapplicable by its terms to the motion to intervene brought under Fed.R.Bankr.P.2018 because Rule 7024 applies to intervention in Adversary proceedings or, if Rule 7024 is applicable, the requirement of timeliness was not met.

Indeed, Zurich's petition to intervene was clearly timely. The "Agreed Order" was signed on September 9, 2003, counsel for AMIC forwarded a copy of the "Agreed Order" to Zurich on September 11, 2003, and Zurich filed on October 1, 2003, its motion seeking vacation of the Order and permission to intervene in this matter, a mere twenty days after the Order. Neither Rule 2018 nor 11 U.S.C. § 1109 set forth any time requirement for intervention. Accordingly, AMIC has cited no authority supporting its conclusion as to the untimeliness of Zurich's filings. Indeed, under Rule 3008 Fed.R.Bankr.P. a claim allowance may be reconsidered at any time. Also under Rule 60(b)(1) Fed. R.Civ.P. [Rule 9024 Fed.R.Bankr.P.] a judgment may be attacked within a year for reasons including "misrepresentation" ... or "misconduct" of an adverse party. In this case, lack of prior notice to an affected party must be considered such misconduct and a misrepresentation to the court (implied if not expressed) that adequate notice had been served. Finally, under Rule 60(b)(1), a judgment may be attacked within a reasonable time for any reason justifying relief; lack of notice is such a reason, and twenty days was a reasonable time.

### B. *The Issue of Estoppel*

■ AMIC also argues that Zurich is subject to the doctrine of estoppel, but cites no precedent in support of its estoppel argument with facts close to the instant case. In each case relied upon by AMIC the issue involved notice of suit, not

tender of defense, and an insurance company received actual notice of a lawsuit filed against its insured. *Employers Reinsurance Corp. (ERC) v. E. Miller Insurance Agency, Inc.*, 332 Ill.App.3d 326, 265 Ill.Dec.943, 773 N.E.2d 707 (2002), relied upon by AMIC, involved an action for declaratory judgment in which ERC denied coverage to its insured for failure to give prompt notice of a lawsuit. Similarly, *Insurance Company of Illinois v. Federal Kemper Insurance Company*, 291 Ill. App.3d 384, 225 Ill.Dec. 444, 683 N.E.2d 947 (1997) involves a coverage case in which an insurer was deemed to have actual notice of an automobile lawsuit against its insured and coverage was found. Neither of the foregoing cases lend any support to AMIC's argument, because the present motion does not present a coverage issue relating to lack of notice of a claim.

■ AMIC also asserts that the Supreme Court of Illinois has recently ruled on similar issues, citing *Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois*, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1 (2003). The facts of *Guillen* are not analogous to the situation presented here. In *Guillen*, Potomac Insurance Company received a formal tender from its insured for defense and indemnification in connection with a lawsuit for negligence. After receiving the tender from its insured, Potomac denied coverage and failed to defend under a reservation of rights or file a declaratory judgment action. The insured eventually settled the lawsuit subject to the condition that the settlement would be satisfied through the assignment of the proceeds of the Potomac policy to the underlying plaintiff. No judgment was entered against the insured. Thereafter, the underlying plaintiff filed a declaratory judgment action seeking a determination that Potomac was obligated to satisfy the judgment. The *Guillen* opinion acknowledged the "general rule" (directly applicable here) under which, absent breach of the duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff. *Id.* at 149, 271 Ill.Dec. 350, 785 N.E.2d 1. But in *Guillen*, Potomac breached its duty to defend for not acting after being tendered the defense, and it was therefore held that the plaintiff could enforce the settlement against the insurer. *Id.* Here, of course, there was no tender of defense, yet the insured Debtor "settled" with claimant without consent by or notice to Zurich.

## II. ISSUE AS TO WHETHER CLAIM QUALIFIED AS "ADMINISTRATIVE CLAIM" UNDER 11 U.S.C. § 503

The Order of September 9, 2003 is vacated because Zurich was an interested party that was not given notice, as discussed below. Therefore, it will be entitled to oppose the claim and argue as to whether AMIC has a proper administrative claim. That issue is not now presented, and is not resolved in order to dispose of the present motion.

## III. ISSUE AS TO WHETHER ZURICH POLICY PROCEEDS ARE ASSETS OF THE ESTATE

This Court certainly has undisputed jurisdiction to pass on asserted administrative claims. Once properly adjudicated, such adjudication could well have consequences as to Debtor's insurance protecting against such claim. It has been held that insurance is an asset of the bankruptcy estate for benefit of claimants. *In re Shondel*, 950 F.2d 1301, 1305 (7th Cir. 1991). In this case, should the claim ultimately be allowed, a judgment against Debtor will not directly dispose of insurance proceeds but may have legal conse-

quences that permit garnishment of such proceeds. However, such a result would not affect the Debtor's estate available for reorganization or distribution to creditors.

### IV. *SHOULD THE COURT ABSTAIN?*

■ Under authority in this Circuit, the claimant against a debtor that has reorganized or has little if any assets may be permitted to sue the debtor as a nominal party in non-bankruptcy courts so as to collect from insurance. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir.1991); *In re Shondel*, 950 F.2d at 1301; *In re Hendrix*, 986 F.2d 195 (7th Cir.1993); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175 (7th Cir.1994).

In light of the situation presented here, the consequence of the AMIC claim may only affect claimant and the insurance, not any other estate assets since the estate is said to lack other assets. That raises the question as to why this issue should be decided here instead of in a non-bankruptcy court. It therefore may be appropriate to consider abstention, and comment will be invited on that possibility at the next status date.

### *CONCLUSION*

For the foregoing reasons, the relief sought by Zurich will be entered: the Order will be vacated; approval of the Agreement rescinded; Debtor will be ordered to tender the Claim for defense and indemnification by Zurich; and Zurich will be given time to file Answer or otherwise plead to the claim if it chooses to defend.