In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 06-2924

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

VILLAGE OF FRANKLIN PARK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8287—**David H. Coar**, *Judge.*

_____

ARGUED JANUARY 25, 2008— DECIDED APRIL 23, 2008

_____

Before BAUER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In this suit for a declaratory judgment, St. Paul Fire and Marine Insurance Company contends that it had no duty to defend its insured, the Village of Franklin Park, Illinois, against a suit by firefighters claiming that the Village had, for decades, shortchanged their pension fund. The district court granted summary judgment for St. Paul, holding that the firefighters' suit alleged intentional conduct rather than a "negligent act, error, or omission" that would be covered by the insurance policy.

This case, over which the district court had diversity jurisdiction, is governed by Illinois law. So we begin by noting that under that law, every Illinois municipality must establish and administer a pension fund for its firefighters. 40 ILL. COMP. STAT. 5/4-101. In 1999 two firefighters in Franklin Park began to complain that the Village had violated Illinois law by underfunding their pension fund for the previous (and this is not a misprint) thirty years. According to the firefighters, they attempted several times to put the question of possible legal action on the agenda of the fund's board of directors but were thwarted by Franklin Park. In 2000 the board made a written demand that the Village pay $4 million to the fund out of an alleged $14 million surplus collected from a municipal utility user tax. A few months later, Franklin Park paid about $130,000 into the fund. The firefighters were not satisfied, though, and in January 2002 they sued the Village in the Circuit Court of Cook County on behalf of themselves and other beneficiaries of the fund.

After the firefighters' attempts to get the alleged underfunding on the board's agenda and their written demand for more funding, but before they filed their state court lawsuit, Franklin Park purchased general liability insurance from St. Paul.[1] The policy covered claims arising from administering employee-benefit plans, including the firefighters' pension fund. The policy included a duty to defend against some claims, and when the firefighters sued, Franklin Park demanded that St. Paul defend it in the suit. But St. Paul quickly denied coverage, citing three

---

[1] There were actually two policies (one for February 1, 2001, through February 1, 2002, and the second for February 1, 2002, through February 1, 2003), but we can ignore that detail.

exclusions in the policy. The Village disputed St. Paul's denial of coverage in October 2002, and in July 2004 St. Paul alleged additional grounds for its denial of coverage. Franklin Park said nothing more, and in December 2004, nearly three years after the underlying litigation began, St. Paul filed this suit in federal court for a declaratory judgment that it had no duty to defend the Village against the claim being asserted by the firefighters. Franklin Park counterclaimed under the insurance contract for breach of the duty to defend and under § 155 of the Illinois Insurance Code for engaging in vexatious and unreasonable conduct. 215 ILL. COMP. STAT. 5/155.

The two lawsuits were resolved nearly contemporaneously. On February 21, 2006, the Circuit Court of Cook County held that Franklin Park had made payments into the fund in violation of Illinois law but had only deprived the fund of about $42,000, which it ordered the Village to pay into the fund. It also ordered the Village to make future payments in a manner consistent with Illinois law. Although that victory, at least from a monetary standpoint, was rather modest, the Village was even less successful in the coverage litigation. On March 31, 2006, the district court granted summary judgment for St. Paul. It held that St. Paul did not have a duty to defend because, as the court understood the underlying lawsuit, the firefighters alleged that the Village intentionally underfunded the pension fund, but St. Paul was only obligated to defend against claims of negligence.

As part of its holding, the district court explained that St. Paul's delay in filing did not estop it from asserting policy defenses because trial in the underlying litigation was "still some time away." Apparently, no one had told the district court that the state case had been resolved.

Franklin Park moved for reconsideration under Federal Rule of Civil Procedure 59(e), seeking to excuse its failure to notify the court of the state decision by, among other arguments, labeling the decision as "newly-discovered evidence." The district court described the Village's arguments as "absurd" and denied the motion.

On appeal, Franklin Park challenges the grant of summary judgment as well as the denial of the Rule 59(e) motion. Under Illinois law, the construction of an insurance policy is a question of law, so our review is de novo. *Sokol & Co. v. Atlantic Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). As usual, we may affirm the district court's judgment on any grounds found in the record. *Valentine v. City of Chi.*, 452 F.3d 670, 681 (7th Cir. 2006).

Franklin Park contends, first, that the underlying litigation was within the scope of its policy and, second, that St. Paul should have been estopped from asserting any policy defenses because it waited too long to seek a declaratory judgment. We need not consider the Village's second argument because Illinois's estoppel doctrine "applies only where an insurer has breached its duty to defend." *Employers Ins. of Wausau v. EHLCO Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). If the insurer had no duty to defend—if, for example, "there clearly was no coverage or potential for coverage"—then it matters not at all that the company waited to assert a policy defense. *Id.* So we begin, and as it turns out we will end, by asking whether St. Paul had a duty to defend against the firefighters' suit.

To determine whether an insurer owes a duty to defend, we compare the allegations in the underlying complaints with the coverage provisions of the insurance policy. *Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 7 (Ill.

2003). The duty to defend is only triggered if the facts alleged in the complaint fall within, or at least potentially within, the scope of the policy. *Id.*

The policy here promises that St. Paul will "have the right and duty to defend any protected person against a claim or suit for loss covered by this agreement." Among other arguments (and several of them are good ones), St. Paul contends that the firefighters' lawsuit was not a claim or suit for a "loss" under the policy. In coverage litigation involving a similar allegation of underfunding a pension, the Illinois Appellate Court defined "loss" as "'the act or fact of losing:  failure to keep possession:  DEPRIVATION.'" *Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.*, 735 N.E.2d 679, 683 (Ill. App. Ct. 2000) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1338 (1993)). It went on to hold that a settlement paid to remedy the failure to make required contributions to a pension was not "loss" because the money paid in the settlement was money the insured had no "right to possess in the first place." *Id.* This reasoning applies to whatever amount Franklin Park may have been required to pay in the firefighters' lawsuit because the firefighters only sought payment into their pension fund of money they believed the Village had illegally put to other uses or never collected in the first place. As we have held, "loss" does not "include the restoration of an ill-gotten gain." *Level 3 Comm., Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910 (7th Cir. 2001).

In response, Franklin Park contends that the firefighters alleged conduct beyond the wrongful retention of funds. But we fail to see why the other allegations—things like using the wrong funding formula, not enrolling an actuary, failing to levy sufficient taxes, and misusing the money

that should have gone to the fund—are substantially different from wrongful retention. Whatever caused the alleged underfunding, the remedy would be for Franklin Park to contribute money that it was legally required to contribute all along. Even if the outcome of the firefighters' suit required the Village to move amounts earmarked for other uses or collect more taxes, the Village would not suffer a "loss" under the policy because it would still only be paying an amount offset by a benefit it had already received—either having the use of extra tax money or having the ability to collect fewer taxes. *See Level 3*, 272 F.3d at 911. Were the rule otherwise, Franklin Park could avoid its pension fund obligations entirely by levying no taxes and making no contributions. It would be absurd to think that in such a situation, the effect of a court finally requiring the Village to make the contributions would be a covered "loss" that St. Paul was required to cover.

Since we agree with the district court's resolution on the duty to defend, we need not address Franklin Park's arguments regarding its Rule 59(e) motion or its request for sanctions under Illinois law. Accordingly, the judgment of the district court is AFFIRMED.