2025 IL App (1st) 230787
No. 1-23-0787

FIRST DIVISION
June 16, 2025

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ISMIE MUTUAL INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2018 CH 11983 |
| | ) | |
| EUGENE PERGAMENT, M.D.; EUGENE | ) | |
| PERGAMENT, M.D.P.C.; NORTHWESTERN | ) | |
| REPRODUCTIVE GENETICS, INC.; TARYN | ) | |
| KESSEL; and DOUG KESSEL, | ) | |
| | ) | |
| | ) | The Honorable |
| Defendants and Counterplaintiffs- | ) | Joel Chupack, |
| Appellants. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an insurance coverage dispute arising from the settlement of an underlying negligence action brought by Taryn and Doug Kessel against Eugene Pergament, M.D. Dr. Pergament was insured by plaintiff-appellee, ISMIE Mutual Insurance Company (ISMIE). ISMIE commenced this action seeking a declaration that it owed no indemnity in connection with the

settlement because, *inter alia*, the settlement agreement did not actually require Dr. Pergament to pay anything to resolve the Kessels' underlying lawsuit. Rather, the settlement called for Dr. Pergament to assign his rights under his ISMIE policy to the Kessels. The defendants-appellants herein (which include the Kessels, Dr. Pergament, and two other entities sued in the underlying action) counterclaimed, seeking a declaratory judgment that ISMIE was obligated to indemnify Dr. Pergament for the settlement and asserting that ISMIE violated section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2022)). After the parties filed cross-motions for summary judgment, the circuit court granted summary judgment to ISMIE with respect to its claim for declaratory relief as well as with respect to defendants' counterclaim. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3                        The Kessels' Underlying Lawsuit

¶ 4     In May 2010, the Kessels initiated a negligence action against Dr. Pergament, Northwestern Reproductive Genetics (NRG), and Asper Biotech, Ltd. (Asper). The lawsuit stemmed from genetic screening while Taryn Kessel was pregnant with the Kessels' child.

¶ 5     The Kessels' original complaint alleged that Dr. Pergament held himself out as "having special training and expertise in prenatal genetic screening services." The complaint identified Dr. Pergament as the "medical director" of NRG, a provider of genetic testing services. Asper is a genetic testing lab located in Estonia. Although Asper was a named defendant in the Kessels' lawsuit, Asper was not involved in the underlying settlement and is not a party to this appeal.

¶ 6     The Kessels alleged that in February 2009, while Taryn was pregnant, they consulted with Dr. Pergament to receive genetic screening for certain diseases, including maple syrup urine disease (MSUD). MSUD is a "rare inherited disorder caused by the body's inability to properly

process amino acids, leading to a characteristic odor of maple syrup in the baby's urine." *Maple Syrup Urine Disease*, Child.'s Hosp. of Phila., https://www.chop.edu/conditions-diseases/maple-syrup-urine-disease-msud (last visited June 9, 2025) [https://perma.cc/822Y-EU8C]. Persons with MSUD have "a genetic mutation that prevents their bodies from breaking down the amino acids leucine, isoleucine and valine," leading to a buildup of the amino acids and their toxic byproducts. *Maple Syrup Urine Disease: What It Is, Symptoms & Treatment*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21168-maple-syrup-urine-disease (last visited June 9, 2025) [https://perma.cc/A8DT-3TKQ]. Potential complications of MSUD include neurological problems, developmental delays, movement disorders, osteoporosis, pancreatitis, and even coma and death. *Id.* Persons with MSUD generally need to follow a strict diet and have frequent tests to monitor their amino acid levels. MSUD may be successfully treated with a liver transplant, but that procedure carries its own risks. *Id.*

¶ 7     "MSUD is inherited as an autosomal recessive pattern, meaning that both parents must carry the mutated gene to have a child with MSUD. *** When two carrier parents have a child together, they have a 25% chance of having a child with the disorder with each pregnancy." Child.'s Hosp. of Phila., *supra*, https://www.chop.edu/conditions-diseases/maple-syrup-urine-disease-msud.

¶ 8     Dr. Pergament collected a genetic sample from Taryn that was sent to Asper for genetic screening, which revealed that she was a carrier for MSUD. A sample was later collected from Doug and sent to Asper for testing. The record reflects that Asper erroneously reported that Doug was not a carrier for MSUD. Dr. Pergament subsequently advised the Kessels (incorrectly) that Doug was not a carrier for MSUD. The couple's child was born in October 2009 with MSUD.

¶ 9 The Kessels alleged that Dr. Pergament, NRG, and Asper were negligent. They further alleged that, had they learned that Doug was a carrier for MSUD, they would have learned the fetus had MSUD and terminated the pregnancy. The Kessels sought damages for the expenses necessary to care for their child due to the disease.

¶ 10                          Dr. Pergament's Policy With ISMIE

¶ 11 Dr. Pergament held a professional liability insurance policy issued to him by ISMIE (the policy). The policy included limits of liability of $2 million per person and $4 million in the aggregate. Dr. Pergament was the only person identified as an insured under the policy.

¶ 12 The policy's "Coverage Agreement" provided that:

> " 'ISMIE' will pay amounts (subject to the limits of liability ***)
>
> any 'insured' is legally obligated to pay as 'damages' because of
>
> any 'claim' against that 'insured' that is 'first made' to ISMIE
>
> during the 'policy period' which involves 'personal injury' and is
>
> caused by 'professional services' provided on or after the
>
> 'retroactive date' and prior to the policy expiration date."

¶ 13 Within the section titled "EXCLUSIONS," the policy stated that it does not apply "To liability for any 'management or entrepreneurial' activities involving any business or entity which is not an 'insured.' " Elsewhere, the policy elsewhere defined "Management or Entrepreneurial Activities" to mean "the operation, administration, or ownership of any entity as well as acting as a medical director or acting in a similar capacity."

¶ 14             ISMIE Defends Dr. Pergament Under a Reservation of Rights

¶ 15    Dr. Pergament notified ISMIE of the Kessels' lawsuit. On November 16, 2010, ISMIE sent Dr. Pergament a letter stating its position that "some of the claims brought against you may not be covered under your insurance policy, and we reserve our rights accordingly."

¶ 16    In that letter, ISMIE noted that NRG was not an insured under the policy, and thus "no allegations against [NRG] are covered under your policy." ISMIE also told Dr. Pergament that "the allegation involving your role as 'Medical Director' for [NRG] is not covered by this policy." ISMIE cited the policy language excluding coverage for "liability for any 'management or entrepreneurial' activities involving any business or entity which is not an 'insured.' "

¶ 17    The November 2010 letter continued:

"As you can see, your policy indemnifies you for covered claims arising out of medical care and treatment you rendered to patients. We therefore will indemnify you for your medical care and treatment rendered to the patient as a medical geneticist.

However, your policy does not provide indemnity for injuries due to liability for any of your management activities involving any business that is not insured under the policy, and [NRG] is not insured under your ISMIE Mutual policy. In this case, the allegations appear to involve your management activities as Medical Director of [NRG]. ***

Because some of the damages and claims asserted against you appear to fall outside the policy's scope of coverage, we reserve all of our rights under the policy and the law. *** You should not interpret any of our actions as an admission or

concession that we do provide coverage for the allegations and

damages contained in this lawsuit."

¶ 18    The record reflects that, pursuant to its defense of Dr. Pergament under a reservation of rights, ISMIE appointed an attorney, Catherine Reiter, to represent Dr. Pergament in the lawsuit. ISMIE's claim file reflects that in November 2010, ISMIE told Dr. Pergament that NRG would need to retain separate counsel. NRG retained Eugene Schoon of Sidley Austin LLP.

¶ 19            The Kessels' First, Second, and Third Amended Complaints

¶ 20    In July 2011, the Kessels filed an amended complaint that added Dr. Pergament's professional corporation, Eugene Pergament, M.D.P.C. (MDPC) as one of the named defendants. The amended complaint alleged that Dr. Pergament was MDPC's "Medical Director" and its "sole shareholder and director." The record reflects that Schoon (who was already representing NRG) proceeded to represent MDPC in the Kessels' lawsuit.

¶ 21    In January 2012, the Kessels filed a second amended complaint that added a count for negligent infliction of emotional distress against all defendants. In December 2012, the Kessels filed a third amended complaint, which added allegations that Dr. Pergament, MDPC, and NRG were aware of prior genetic screening errors by Asper and thus were "indifferent or consciously disregarded the [Kessels'] welfare." These amended complaints maintained the allegations that Dr. Pergament was the "medical director" of NRG and "director" of MDPC.

¶ 22            2016 Communications Between ISMIE and Dr. Pergament

¶ 23    In October 2016, ISMIE sent a letter to Dr. Pergament (copying his counsel, Cathy Reiter) informing him that the Kessels made a settlement demand of $4 million. The letter stated that "this case has possible exposure in excess of your policy limits" and reiterated that "ISMIE Mutual is defending this case under a reservation of rights." In the same letter, ISMIE again stated that "no

allegations against [NRG] are covered under our policy," and "the allegation involving your role as 'Medical Director' for [NRG] is not covered" by the policy.

¶ 24    As in the November 2010 reservation of rights letter, the October 2016 letter told Dr. Pergament that the policy "indemnifies you for covered claims arising out of medical care and treatment you rendered to patients" and that he would be indemnified for "your medical care and treatment rendered to the patient as a medical geneticist." However, ISMIE stated the policy "does not provide indemnity for *** liability for any of your management activities" for NRG. ISMIE warned that if a "verdict or judgment is rendered against you on the basis of injuries caused by your management activities" for NRG, "your ISMIE Mutual policy will not provide indemnification." ISMIE stated that it would "continue to proceed under a reservation of rights."

¶ 25    On November 1, 2016, Eugene Schoon wrote to ISMIE, stating that he was acting as Dr. Pergament's "personal counsel" as well as NRG's counsel. Schoon acknowledged that since November 2010, "ISMIE has defended Dr. Pergament, receiving regular updates on the progress of the suit from Catherine Reiter, ISMIE's appointed counsel."

¶ 26    In his November 1, 2016, letter, Schoon stated that he disagreed with ISMIE's "interpretation" of the Kessels' allegations against Dr. Pergament and ISMIE's coverage position. Schoon communicated Dr. Pergament's position that he was covered under the policy because he was being sued for his care and treatment of the Kessels and for his "clinical decision to use Asper Biotech" and was not being sued in his capacity as "medical director" for NRG. Thus, Schoon disputed ISMIE's reliance on the policy's exclusion for managerial or entrepreneurial activities.

¶ 27    Schoon asked that ISMIE work with him toward resolution of the case. He stated that the Kessels had retained a "well-credentialed expert," Dr. Wayne Grody, to offer critical opinions of Dr. Pergament. Schoon also stated that the Kessels had made a "demand within policy limits."

¶ 28    On November 8, 2016, Schoon sent another letter to ISMIE stating that Dr. Grody had been deposed. Schoon stated that Dr. Grody's testimony made clear "that the claims by the Kessels are within the coverage that ISMIE articulated." Schoon again urged ISMIE to "act as soon as possible to resolve this matter." On November 11, 2016, Schoon again e-mailed ISMIE asking to work toward settlement.

¶ 29    On December 5, 2016, ISMIE's counsel wrote Schoon a letter, which defendants rely on heavily in their arguments in this appeal. That letter stated:

> "As you are aware, at all times since the reporting of this claim in 2010, ISMIE Mutual has been defending Dr. Eugene Pergament under a Reservation of Rights. At this time, ISMIE Mutual continues to defend Dr. Pergament under a Reservation of Rights and denies that it has a duty to provide indemnification on behalf of Dr. Pergament.
>
> Please also allow this correspondence to serve as confirmation that [MDPC] is not, and has never been an ISMIE Mutual insured. Accordingly, no coverage is afforded to [MDPC] in this matter. Similarly, [NRG] is not an ISMIE Mutual insured, and thus is also not afforded coverage under any ISMIE Mutual policy."

¶ 30    Dr. Pergament Settles the Underlying Case by Assigning His Rights Under the ISMIE

Policy to the Kessels

¶ 31    In July 2018, Schoon asked ISMIE's outside counsel via e-mail if ISMIE was willing to discuss settlement of Kessels' lawsuit. ISMIE's counsel responded that ISMIE's coverage position

had not changed and that ISMIE was "not interested or willing to participate in settlement discussions."

¶ 32    Schoon (on behalf of Dr. Pergament, MDPC, and NRG) and the Kessels' counsel agreed to a mediation session before a retired circuit judge (Honorable Stuart Nudelman), which took place on September 12, 2018. Later in September 2018, the Kessels' counsel informed the court that a settlement had been reached with Dr. Pergament, MDPC, and NRG.

¶ 33    The settlement agreement was not shared with ISMIE until the entry of an agreed protective order on November 8, 2018. In that order, ISMIE agreed not to publish or disclose the agreement except in relation to the Kessels' lawsuit and related litigation. The parties agreed that "any party seeking to use the Settlement Agreement in any cause of action, trial or hearing related to and/or arising out of this matter shall take reasonable steps in an effort to preserve the confidential nature of the Settlement Agreement."

¶ 34    The parties did not file a copy of the actual settlement agreement in the circuit court, and the record on appeal does not contain a copy. However, ISMIE quoted from the settlement agreement in its eventual motion for summary judgment, as did the circuit court in the ensuing order.[1] The parties do not dispute the pertinent language of the settlement agreement.

¶ 35    Under the settlement, the Kessels "fully, completely, and irrevocably release[d]" Dr. Pergament, NRG, and MDPC with respect to "any acts, omissions or representations made in connection with the facts and events alleged in the Lawsuit." Although the settlement specified a settlement amount, it made clear that none of this amount would be paid by Dr. Pergament (ISMIE's insured), or NRG or MDPC. Rather, it contemplated that the Kessels would seek this amount from ISMIE after Dr. Pergament assigned to the Kessels his rights under the policy.

---

[1]ISMIE's brief indicates that when it filed for summary judgment, the circuit court was provided a copy of the settlement agreement "by hand to maintain its confidentiality."

Section 1.2 of the agreement explained that any payment of the settlement amount would be effectuated solely through this assignment:

> "For purposes of clarity, the Parties state and agree that it is their intent that none of the Releasees shall have any liability for any of the Released Claims above the Settlement Amount *** *which Amount shall be paid by the Released Parties assignment of rights against ISMIE to the Releasing Parties as provided for herein*." (Emphasis added.)

¶ 36    Section 1.3 similarly stated that, in consideration of the Kessels' agreement, the "Released Parties agreed to the settlement payment *** *to be paid by the assignment to the [Kessels] of all rights to collection from ISMIE under the ISMIE policy*." (Emphasis added.) It reiterated that:

> "For the avoidance of doubt, under no circumstances shall any of the Released Parties or Releasees have any other obligation to pay the Settlement Payment regardless of whether the Releasing Parties are able to collect the Settlement Payment from the ISMIE Policy or ISMIE."

¶ 37    Section 4.1 of settlement agreement also contained a "Covenant Not to Sue", in which the Kessels "agree[d] never to commence ***, or cause to be prosecuted against the Releasees *** any complaint, suit or proceedings based on a claim, demand, cause of action, damage, liability that is the subject matter of this Settlement Agreement."

¶ 38    Based on the settlement, on November 6, 2018, the trial court dismissed the claims against Dr. Pergament, MDPC, and NRG with prejudice.

¶ 39         The Kessels' Fourth Amended Complaint Adds Claims Against ISMIE

¶ 40     Also on November 6, 2018, the Kessels filed a fourth amended complaint that added claims against ISMIE as a defendant. Counts I and II of that complaint pleaded negligence claims against Dr. Pergament, notwithstanding that the recently executed settlement agreement contained a covenant not to sue him.

¶ 41     Count III of the Kessels' fourth amended complaint sought a declaratory judgment that ISMIE is obligated to indemnify them in the amount of the settlement reached with Dr. Pergament. In that count, the Kessels alleged that they sued Dr. Pergament "individually as a medical geneticist and not in a representative capacity or management capacity or for any management or entrepreneurial activity on his part." The Kessels alleged that ISMIE had advised Dr. Pergament in October 2016 "that it was going to indemnify him" for the care and treatment that he rendered to the Kessels, but that in December 2016, ISMIE "inexplicably changed its position and refused to indemnify" Dr. Pergament. The Kessels pleaded that under the settlement, Dr. Pergament "agreed to pay the Kessels an amount that would be covered under the insurance policy" and assigned to the Kessels his right to collect from ISMIE under the policy. The Kessels claimed they were "forced to add ISMIE" as a defendant because ISMIE denied its obligation to indemnify Dr. Pergament. In count IV of the fourth amended complaint, the Kessels alleged that ISMIE violated section 155 of the Illinois Insurance Code by "failing to honor the settlement agreement between Pergament and the Kessels" and failing to indemnify Dr. Pergament.

¶ 42     Dr. Pergament promptly moved to dismiss the claims against him in the Kessels' fourth amended complaint, citing the settlement agreement. Dr. Pergament was dismissed in December 2018. However, the Kessels' case remained pending against ISMIE and the remaining defendant, Asper. The record and the parties' briefs reflect that the Kessels' underlying case has been stayed.

¶ 43          ISMIE's Declaratory Judgment Action and Defendants' Counterclaim

¶ 44    In September 2018, ISMIE commenced the instant action by filing a complaint seeking a declaration that it had no duty to indemnify Dr. Pergament or the Kessels pursuant to the settlement agreement. In October 2019, ISMIE filed an amended complaint for declaratory judgment containing four counts.

¶ 45    In count I, ISMIE sought a declaration that its policy provided no indemnity coverage for the underlying lawsuit because it was based on Dr. Pergament's "negligent management of his practice resulting in the alleged negligent genetic testing and reporting of erroneous results." ISMIE asserted that it had no duty under the policy to indemnify for liability arising from Dr. Pergament's "management, entrepreneurial, ownership, or administration activities" or his "conduct as a Medical Director."

¶ 46    In count II—upon which the trial court ultimately entered summary judgment—ISMIE sought a declaration that under the settlement agreement, Dr. Pergament "suffered no loss to which any right to indemnification could attach." ISMIE pleaded that the settlement agreement released Dr. Pergament "from any obligation to pay the stipulated settlement amount/payment regardless of whether it is collected from ISMIE." Because Dr. Pergament had been released from any obligation to pay, ISMIE contended it had no obligation to indemnify him under the policy, insofar as the policy only required ISMIE to pay amounts that Dr. Pergament became "legally obligated to pay."

¶ 47    In count III, ISMIE sought a declaration that the settlement agreement was unenforceable against ISMIE because it purported to release claims against NRG and MDPC—entities who were never insured by ISMIE—in exchange for payment by ISMIE. ISMIE also claimed that the amount of the settlement was unreasonable. In count IV, ISMIE sought a declaration that the settlement was unenforceable because it was the "product of collusion." ISMIE pointed out that on the very

same day that Dr. Pergament was dismissed from the underlying suit pursuant to the settlement, the Kessels filed the fourth amended complaint that again named Dr. Pergament with "new allegations *** describing his conduct in a way intended to bring it facially within the coverage of the ISMIE Mutual policy." ISMIE alleged the Kessels' fourth amended complaint was not filed in good faith.

¶ 48    Defendants filed a motion to dismiss ISMIE's first amended complaint, which was denied.

¶ 49    In May 2020, defendants answered ISMIE's first amended complaint and filed a two-count counterclaim against ISMIE. Count I of the counterclaim sought a declaratory judgment that ISMIE is obligated to indemnify the Kessels for the amount of the settlement reached with Dr. Pergament. In count II, the Kessels alleged that ISMIE violated section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)) by failing to indemnify Dr. Pergament under the policy and failing to "honor the settlement agreement" between Dr. Pergament and the Kessels.

¶ 50                     Cross-Motions for Summary Judgment

¶ 51    On April 12, 2022, defendants filed a motion for summary judgment on their counterclaim for declaratory judgment against ISMIE.

¶ 52    Also on April 12, 2022, ISMIE filed a motion for summary judgment with respect to counts II and III of its first amended complaint. As to count II, ISMIE maintained that it had no indemnity obligation because the policy only obligated it to indemnify amounts Dr. Pergament became "legally obligated to pay," but the settlement agreement never obligated him to pay any part of the settlement amount. Instead, the agreement called for Dr. Pergament to assign to the Kessels his rights under the ISMIE policy.

¶ 53    ISMIE argued its position was supported by our supreme court's reasoning in *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141 (2003), a coverage dispute where the settlement

of an underlying negligence action against an insured called for the assignment of the insured's rights under the policy to the plaintiff. Because both ISMIE and defendants rely on *Guillen* as support, we review that decision in detail.

¶ 54    In *Guillen*, the plaintiff in the underlying action brought a personal injury suit against her former landlords (the Ortizes) based on exposure to lead-based paint. *Id.* at 143. The Ortizes notified their insurer (Potomac) of the lawsuit, but it "refused the tender and denied any obligation to defend or indemnify" the Ortizes, claiming a recently added endorsement to the policy contained a lead exclusion that precluded coverage. *Id.* at 143-44. The insurer did not defend the Ortizes under a reservation of rights, nor did it file suit seeking a declaration as to whether it owed coverage. *Id.* at 144.

¶ 55    The plaintiff in *Guillen* and the Ortizes subsequently entered into a settlement agreement to resolve the underlying action through an assignment of rights against the insurer:

> "Under the terms of the settlement, the Ortizes agreed to pay Guillen the sum of $600,000 in exchange for a release from liability ***. Importantly, however, the Ortizes' obligation to pay the $600,000 was subject to the condition that it would 'be satisfied solely through the assignment' to [plaintiff] of the Ortizes' right to payment from Potomac. The assignment of the Ortizes' right to payment from Potomac was included within the terms of the settlement agreement. No other payment obligation was imposed upon the Ortizes and no judgment was entered against them." *Id.*

¶ 56    The underlying plaintiff in *Guillen*, as assignee of the Ortizes' rights, filed a complaint seeking a declaration that Potomac was obligated to pay it the $600,000 settlement amount. *Id.*

Potomac moved for summary judgment, arguing that (1) it had no duty to defend due to the lead policy exclusion and (2) even if it breached its duty to defend, it was under no obligation to pay the settlement amount because under the policy, it was required only to pay " 'those sums that the insured becomes legally obligated to pay as damages.' " *Id.* at 145-46. Potomac argued that the Ortizes were never legally obligated to pay anything because their "payment obligation under the settlement agreement was limited solely to an assignment of [their] right to recover under their insurance policy." *Id.* at 146. Potomac argued that because their insureds, the Ortizes, were not entitled to indemnification under the policy, neither was the *Guillen* plaintiff, as the Ortizes' assignee. *Id.* The circuit court granted summary judgment to Potomac, but the appellate court reversed. *Id.* at 147-48.

¶ 57     In its analysis, our supreme court first determined that Potomac had breached its duty to defend the Ortizes in the underlying negligence action. *Id.* at 150-55 (concluding Potomac failed to prove it gave requisite notice of the policy modification containing the lead exclusion it relied on to deny its duty to defend).

¶ 58     The supreme court then turned to Potomac's alternative argument that it had no duty to indemnify because its insureds (the Ortizes) never became "legally obligated to pay" any amount under the settlement "because their payment obligation was limited solely to an assignment" of their rights under the insurance policy. *Id.* at 159. Our supreme court thus assessed: "How should the 'legally obligated to pay' language be interpreted when an insurer breaches its duty to defend?" *Id.* It recognized that this was an issue of first impression in Illinois, but that "the prevailing view" of other jurisdictions "is that a liberal construction of the words 'legally obligated to pay' in favor of the insured is appropriate, once the insurer has breached its duty to defend." *Id.* at 161. Our supreme court agreed with this view, reasoning:

"Once the insurer has breached its duty to defend, it is in no position to demand that the insured be held to a strict accounting under the policy language. Fairness requires that the insured, having been wrongfully abandoned by the insurer, be afforded a liberal construction of the 'legally obligated to pay' language.

In the case at bar, the Ortizes agreed to pay Guillen the sum of $600,000 to be paid solely from an assignment of the Ortizes' rights against Potomac given to Guillen. *** It is true that, in practical terms, the Ortizes never faced any personal financial risk under the settlement agreement. However, because Potomac breached its duty to defend, the Ortizes are entitled to have the 'legally obligated to pay' language liberally construed in their favor. Applying that construction here, the Ortizes remained 'legally obligated to pay' under the terms of the insurance policy. Accordingly, Potomac's argument that it has no duty to indemnify the Ortizes, because the Ortizes had no 'legal obligation to pay,' fails." *Id.* at 161-62.

¶ 59    In moving for summary judgment on count II of its first amended complaint, ISMIE emphasized *Guillen*'s holding that an insured is entitled to a liberal construction of "legally obligated to pay" policy language *if the insurer has breached its duty to defend*. ISMIE argued that the insurer's breach of duty to defend "was the fundamental policy basis" for applying a liberal construction in *Guillen*, whereas in this case ISMIE did not breach its duty to defend. In turn,

ISMIE argued that Dr. Pergament was *not* entitled to have the "legally obligated to pay" policy language liberally construed in his favor.

¶ 60    Regarding count III, ISMIE argued that the settlement agreement was unreasonable as a matter of law because it "purports to obligate ISMIE to pay a settlement on behalf of two parties ISMIE does not insure." ISMIE pointed out the settlement did not differentiate between amounts owed by either Dr. Pergament (its insured) or MDPC and NRG, which it did not insure.

¶ 61    ISMIE also sought summary judgment with respect to defendants' counterclaim for the same reasons it sought summary judgment.

¶ 62    In opposition to ISMIE's motion for summary judgment and in support of their cross-motion, defendants argued that *Guillen* actually "buttresses [their] claim against ISMIE and obligates it to pay the settlement." Defendants urged that ISMIE had breached the policy, citing the December 2016 letter to Dr. Pergament as evidence that ISMIE "abandoned" Dr. Pergament nearly two years before the 2018 settlement was reached. Based on that alleged breach, defendants argued that under *Guillen*, they were "entitled to have the 'legally obligated to pay' language in ISMIE's policy liberally construed in their favor."

¶ 63                    The Trial Court Grants Summary Judgment to ISMIE

¶ 64    Following briefing on the cross-motions, on April 10, 2023, the trial court entered a written order that granted summary judgment to ISMIE based on count II of its first amended complaint. The court additionally granted summary judgment in ISMIE's favor with respect to defendants' counterclaims.

¶ 65    The court agreed with ISMIE's argument in count II that it had no obligation to indemnify because its insured, Dr. Pergament, was not "legally obligated to pay" any part of the settlement under the plain language of the settlement agreement. The trial court recognized *Guillen*'s holding

that where an insurer has breached its duty to defend, the insured is entitled to a liberal construction of the phrase "legally obligated to pay." It recognized that in *Guillen*, the insured were entitled to a liberal construction of this phrase, since the insurer breached the duty to defend. *Id.* at 162.

¶ 66    In this case, however, the trial court found: "Unlike in *Guillen*, ISMIE did not breach its duty to defend" Dr. Pergament. "Rather, ISMIE provided a defense under a reservation of rights and filed the instant action." The trial court concluded: "Because ISMIE did not breach its duty to defend, Dr. Pergament is not entitled to a liberal construction of 'legally obligated to pay.' Rather, this court must enforce the unambiguous language of the Policy as written."

¶ 67    The trial court found that the settlement agreement unequivocally provided that Dr. Pergament was not legally obligated to pay any part of the settlement, "even if the Kessels cannot collect from ISMIE." The trial court reasoned that since Dr. Pergament was not legally obligated to pay any portion of the settlement under any circumstances, ISMIE had no obligation to indemnify him. In turn, the Kessels, "as Dr. Pergament's assignees, are not entitled to any payment under the Policy." For these reasons, it granted ISMIE summary judgment on count II of its first amended complaint and with respect to count I of defendants' counterclaim.

¶ 68    The court also found ISMIE was entitled to summary judgment with respect to count II of the defendants' counterclaim against ISMIE, which alleged a violation of section 155 of the Insurance Code. It found defendants could not recover under section 155 because ISMIE "did not refuse to defend Dr. Pergament and there was a *bona fide* dispute as to coverage which has been resolved in ISMIE's favor."

¶ 69    The court further concluded that because it found in ISMIE's favor on count II of the first amended complaint, the remaining counts of ISMIE's first amended complaint were moot. The court thus granted ISMIE summary judgment with respect to count II of its first amended

complaint, denied defendants' cross-motion, and granted ISMIE summary judgment with respect to both counts of the defendants' counterclaim. The court specified that its order was a final judgment.

¶ 70                                                  ANALYSIS

¶ 71    On appeal, defendants argue that the court erred in granting summary judgment to ISMIE and denying their cross-motion for summary judgment on both counts of their counterclaim.

¶ 72    Defendants primarily assert that summary judgment in ISMIE's favor was erroneous because there was "no genuine issue of material fact that ISMIE breached its agreement with [Dr. Pergament] by informing him that it was not going to indemnify him *** even though he was sued in an individual capacity." They claim the "uncontroverted evidence" established that ISMIE was "obligated to indemnify" Dr. Pergament for the settlement of the Kessels' lawsuit. Defendants claim that ISMIE breached the policy through its December 5, 2016, letter to Dr. Pergament, which (according to defendants) "changed [ISMIE's] position" regarding its obligation to indemnify him. Notably, defendants do not allege that ISMIE ever breached a duty to defend Dr. Pergament. Instead, they claim that ISMIE "abandoned" Dr. Pergament by informing him in December 2016 that it would not indemnify him, nearly two years before the eventual settlement. They assert the refusal to do so was vexatious and unreasonable, in violation of section 155 of the Insurance Code.

¶ 73    Defendants also urge that the circuit court erred in applying *Guillen* in the course of granting ISMIE summary judgment on count II. They recognize that the circuit court found that ISMIE had not breached the duty to defend and thus relied on *Guillen* to hold that Dr. Pergament was *not* entitled to a liberal construction of the policy's "legally obligated to pay" language.

¶ 74    Defendants urge that the court's reliance *Guillen* was misplaced because it "ignored" ISMIE's December 2016 letter, which they maintain was a breach of the policy. Defendants aver

that "since ISMIE breached its agreement by failing to indemnify him," they were entitled to have the "legally obligated to pay" language in the policy liberally construed in their favor. Thus, they urge that the ISMIE still had an indemnity obligation, notwithstanding that the settlement did not require any actual payment from its insured, Dr. Pergament, to resolve the underlying lawsuit.

¶ 75 Although not reached by the circuit court, defendants also argue that ISMIE was not entitled to summary judgment on count III, as the settlement was reasonable. Finally, defendants claim the circuit court erred in granting summary judgment to ISMIE with respect to counts I and II of defendants' counterclaim. They argue (1) ISMIE had a duty to indemnify Dr. Pergament and (2) ISMIE's "refusal to indemnify" was vexatious and unreasonable within the meaning of section 155 of the Insurance Code.

¶ 76 For the following reasons, we reject defendants' arguments and affirm the circuit court in all respects.

¶ 77 Standard of Review and Insurance Contract Interpretation Principles

¶ 78 Under section 2-1005(c) of the Code of Civil Procedure, summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022).

¶ 79 "Where parties file cross-motions for summary judgment, they agree that the case presents only questions of law, and they invite the trial court to decide these legal questions on the basis of the record." *First Mercury Insurance Co. v. Nationwide Security Services, Inc.*, 2016 IL App (1st) 143924, ¶ 16. The standard of review on cross-motions for summary judgment is *de novo*. *Id.*

¶ 80 The construction of the terms of an insurance policy similarly presents a question of law, which is also reviewed *de novo*. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan,*

*Inc.*, 2021 IL 125978, ¶ 30. "As an insurance policy is a contract, the rules applicable to contract interpretation govern." *Miecinski v. State Farm Mutual Automobile Insurance Co.*, 2024 IL App (1st) 230193, ¶ 23. Our supreme court has stated:

> "The primary function of the court in construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language. [Citation.] If the terms of the insurance contract are clear and unambiguous, the court will give them their plain and ordinary meaning. [Citations.] Conversely, if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the contract." *West Bend Mutual Insurance Co.*, 2021 IL 125978, ¶ 32.

¶ 81     Defendants Did Not Establish That ISMIE Breached a Duty to Defend or Indemnify

¶ 82     We turn to defendants' contention that ISMIE was not entitled to summary judgment because the evidence established that ISMIE breached the policy by "refusing to indemnify" Dr. Pergament. Notably, they do *not* allege that ISMIE breached the duty to defend. Instead, they claim that the December 2016 letter breached the policy because it indicated ISMIE "refuse[d] to provide indemnification", well before a settlement was reached in 2018.

¶ 83     However, defendants' position is untenable in light of well-settled case law establishing the principles that (1) an insurer does not breach its duty to defend if it defends under a reservation of rights and (2) a duty to indemnify does not even arise until the insured has incurred liability. These principles foreclose defendants' claim that ISMIE committed a breach through its December 2016 letter.

¶ 84    "It is well settled that an insurer's duty to defend and its duty to indemnify its insured are separate and distinct duties." *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 23. "[A]n insurer's duty to indemnify its insured cannot exist in the absence of a duty to defend ***." *Id.*

¶ 85    The duty to defend is determined by comparing the factual allegations of the underlying complaint to the coverage provisions of the insurance policy. *Id.* ¶ 24. If an underlying complaint against an insured "alleged facts within, or potentially within the policy's coverage, the insurer's duty to defend is triggered" even if the allegations are groundless. *Id.* In assessing whether there is a duty to defend, the allegations are "liberally construed in favor of the insured, resolving any doubt or ambiguity about coverage against the insurer." *Id.*

¶ 86    If the duty to defend is triggered by the underlying complaint's allegations, our supreme court has made clear what an insurer must do if it wishes to retain its right to assert policy defenses to coverage:

> "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-51 (1999).

¶ 87    "The estoppel doctrine applies only where an insurer has breached its duty to defend." *Id.* at 151. If an insurer has breached the duty to defend, the insurer is barred from raising policy defenses to coverage. *Id.* at 151-52.

¶ 88    There is no question that the Kessels' allegations against Dr. Pergament triggered ISMIE's duty to defend him in the underlying action. Significantly, defendants do not allege that ISMIE ever breached its duty to defend Dr. Pergament in the Kessels' underlying lawsuit. To the contrary, it is undisputed that ISMIE defended him, albeit under a reservation of rights. That is, ISMIE elected one the "two options" contemplated by our supreme court in *Ehlco* to preserve its ability to assert policy defense to coverage. See *id.* at 150-51.

¶ 89    The record reflects that ISMIE paid for an attorney (Reiter) to defend Dr. Pergament in the underlying action, but that another attorney (Schoon) ultimately represented MDPC, NRG, as well as Dr. Pergament. The record indicates that Schoon was involved in negotiating the settlement that was reached with the Kessels in 2018. Regardless, this does not mean that ISMIE ever breached a duty to defend.

¶ 90    Defendants do not suggest that ISMIE breached its duty to defend. Instead, they assert that ISMIE breached the policy "by sending a letter on December 5, 2016 [to Schoon] denying that it had a duty and refused to provide indemnification" to Dr. Pergament. That letter stated, in relevant part: "At this time, ISMIE Mutual continues to defend Dr. Pergament under a Reservation of Rights and denies that it has a duty to provide indemnification on behalf of Dr. Pergament." Defendants urge this letter constituted a breach of ISMIE's duty to indemnify, long before the settlement was reached in 2018.

¶ 91    This claim is without merit. Defendants cannot establish ISMIE committed a breach of a duty to indemnify in December 2016, where it is undisputed that (1) ISMIE continued to defend

Dr. Pergament under a reservation of rights and (2) Dr. Pergament had not yet incurred any liability in the underlying lawsuit at that time. Indeed, no duty to indemnify could possibly have arisen. Defendants cannot show a breach under these circumstances.

¶ 92    Tellingly, defendants cite no case law suggesting that an insurer can be found to have breached an insurance policy while defending under a reservation of rights, simply by communicating its coverage position "den[ying] that it has a duty to provide indemnification" to the insured *before there has been any finding of liability or damages*.

¶ 93    The reasons for this are apparent. First, our supreme court's decision in *Ehlco* and its progeny make clear that an insurer does *not* forfeit its right to assert policy defenses to coverage if it either defends under a reservation of rights or files a declaratory judgment action. See, *e.g.*, *Johnson v. State Farm Fire & Casualty Co.*, 346 Ill. App. 3d 790, 794 (2004) (insurer who provided a defense under a reservation of rights under homeowner's policy "was not estopped from asserting that it had no duty to indemnify [insured] under the umbrella policy"); see also *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶¶ 51-52 (if an insurer has "preserved its rights by filing a declaratory judgment action" it "may still challenge its obligation to pay the settlement" and retains the ability to contest "whether the claims giving rise to the settlement are covered under its policies").

¶ 94    Indeed, defendant's claims that ISMIE's December 2016 letter was a breach are contrary to the purpose of defending under a reservation of rights. As ISMIE states in its brief, "An insurance company does not defend under a reservation of rights unless it takes the position that it does not have a duty to indemnify the claims." When an insurer sends a reservation of rights letter indicating that policy defenses bar coverage, it is, in essence, preserving its defenses to indemnify, if and when its insured incurs any liability.

¶ 95    That is what ISMIE did here, in multiple communications to Dr. Pergament beginning in 2010. ISMIE's reservation of rights letters in November 2010 and October 2016 cited the policy language excluding coverage for liability incurred by Dr. Pergament for "management or entrepreneurial activities," including acts in his capacity as a "medical director" for other, non-insured entities such as NRG. Accordingly, they stated that "your policy does not provide indemnity for injuries due to liability for any of your management activities involving any business that is not insured under the policy."

¶ 96    We recognize (as defendants emphasize) that the prior reservation of rights letters in November 2010 and October 2016 also stated ISMIE "will indemnify you for your medical care and treatment rendered to the patient as a medical geneticist." However, the same letters recited the policy language that ISMIE would pay amounts its insured became "legally obligated to pay." That is, ISMIE acknowledged that it would have an indemnity obligation if Dr. Pergament, its insured, was found to be liable for his personal care of the Kessels as a medical geneticist *and* if he became legally obligated to pay for such liability.

¶ 97    We acknowledge that the December 2016 letter used different language, but we do not find it was a breach of the policy or an "abandonment" of the Kessels. It did not include the prior letters' statement that ISMIE would indemnify him for care rendered to the Kessels. Instead, it stated: "*At this time*, ISMIE Mutual continues to defend Dr. Pergament under a Reservation of Rights and denies that it has a duty to provide indemnification on behalf of Dr. Pergament." (Emphasis added.) The December 2016 letter also advised that neither NRG or MDPC was an insured and thus neither had coverage.

¶ 98    Contrary to defendants' urging, we cannot say that the December 2016 letter was a breach of any obligation owed to Dr. Pergament by ISMIE. That letter reiterated that ISMIE was

continuing to defend Dr. Pergament, albeit under a reservation of rights. It also stated that "[a]t this time" ISMIE "denies that it has a duty to provide indemnification on behalf of Dr. Pergament."

¶ 99  Defendants suggest that this was a reversal of ISMIE's coverage position, meaning it abandoned Dr. Pergament and breached its duty to indemnify. We disagree, as the December 2016 letter can be reconciled with ISMIE's prior reservations of rights letters. The December 2016 letter did not explicitly repudiate the prior letters' acknowledgment that ISMIE would be obliged to indemnify Dr. Pergament, *if* he became obligated to pay amounts due to his liability for his personal acts as medical geneticist. Rather it indicated its belief that, "at this time," as of December 2016, it had no obligation to do so. This is different from indicating an outright refusal to indemnify, regardless of the outcome of the underlying action. The record reflects there was a *bona fide* dispute as to whether the Kessels' allegations were premised on Dr. Pergament's personal treatment of the Kessels, or if it was based on his decision in his capacity as a medical director or manager of NRG to rely on Asper's lab to deliver accurate results. The December 2016 letter reflected ISMIE's belief that any liability—*if it were ultimately found*—would be excluded because it stemmed from Dr. Pergament's "management or entrepreneurial" activities.

¶ 100  Defendants do not cite a single case suggesting that an insurer's statement "den[ying] that it has a duty to provide indemnification" *while defending under a reservation of rights* constitutes a breach of an insurance policy. This is not surprising, since longstanding precedent establishes that an insurer does not forfeit coverage defenses if it defends under a reservation of rights, as ISMIE did here. See, *e.g.*, *Ehlco*, 186 Ill. 2d at 150 (an insurer that "takes the position that a complaint potentially alleging coverage is not covered" has two options to avoid being estopped from raising policy defenses to coverage: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage"); *Schal Bovis, Inc. v. Casualty Insurance*

*Co.*, 315 Ill. App. 3d 353, 370 (2000) ("If the insurer fails to take either of the actions required (*i.e.*, defending under a reservation of rights or seeking a declaratory judgment action), the insurer will be estopped from raising coverage defenses ***.").

¶ 101    In light of this precedent, we must reject defendants' suggestion that ISMIE abandoned its insured, Dr. Pergament, through the December 2016 letter or otherwise. To the contrary, as permitted by *Ehlco* and its progeny, ISMIE defended Dr. Pergament while reserving its rights to argue that it did not owe coverage under the terms of its policy. Since 2010, ISMIE repeatedly advised Dr. Pergament that it was defending him under a reservation of rights, recognizing that (1) the policy would provide indemnity for personal liability arising out of his medical care and treatment of the Kessels, but (2) the policy excluded coverage for any potential liability stemming from his management activities of noninsured entities, such as his role as "Medical Director" of NRG. Its December 2016 letter was not an abandonment of Dr. Pergament, as it did not change ISMIE's coverage position. It reiterated that ISMIE continued to defend him. Insofar as ISMIE "denie[d] that it has a duty to provide indemnification," this apparently reflected its belief that (based on the facts known at that time) any *potential* finding of liability and damages would fall within the policy language excluding coverage for Dr. Pergament's management or entrepreneurial activities with respect to noninsured entities such as NRG and MDPC.

¶ 102    This leads us to a more fundamental problem with defendants' claim that the December 2016 letter was a breach of a duty to indemnify: Dr. Pergament *had not yet incurred any liability* in the underlying lawsuit, which is a necessary prerequisite for such a duty. As ISMIE correctly points out, our case law establishes that "generally the duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 960

(2005) (citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 293 (2001)). "Once the insured has incurred liability because of the underlying claim, an insurer's duty to indemnify arises only if the insured's activity and the resulting loss or damage actually fall within" the policy's coverage. (Emphasis and internal quotation marks omitted.) *Id.* at 960-61. Accordingly, the question of whether the insurer has a duty to indemnify " 'is only ripe for consideration if the insured has already incurred liability in the underlying claim against it.' " *Travelers Insurance Co.*, 197 Ill. 2d at 293 (quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 127 (1992)).

¶ 103   This principle is an independent basis to reject defendants' claim that ISMIE breached a duty to indemnify in December 2016. At that point, there had been no finding of liability against Dr. Pergament in the underlying action. Certainly, he had not become legally obligated to pay any damages. In turn, as a matter of law, ISMIE could not have had a duty to indemnify at that time. As no such duty yet existed, ISMIE's December 2016 letter could not have been a breach of that duty.

¶ 104   We note that defendants' briefing devotes significant space to discuss allegations from the Kessels' complaints, deposition testimony, and correspondence regarding the underlying lawsuit, suggesting this is proof that Dr. Pergament was being sued for his conduct as the Kessels' individual geneticist. They urge this means that ISMIE was obligated to indemnify him. In this regard, defendants seemingly conflate the duty to defend and the duty to indemnify, which are "separate and distinct duties." *United Services Automobile Ass'n*, 357 Ill. App. 3d at 961. "The duty of an insurer to defend is much broader than its duty to indemnify." *Id.* Certainly, the Kessels' allegations against Dr. Pergament triggered ISMIE's duty to *defend*, and it is undisputed that ISMIE did so under a reservation of rights. Yet the record evidence cited by defendants does not

help their claim that ISMIE's December 2016 letter constituted a breach of a duty to indemnify. For the reasons discussed, defendants could not establish there was a breach of any indemnity obligation at that point in time. For the foregoing reasons, we reject defendants' primary argument, *i.e.*, that the evidence established that ISMIE breached the policy.

¶ 105    Defendants Were Not Entitled to a "Liberal Construction" Under *Guillen*

¶ 106   This brings us to defendants' contention that the court erred in relying on *Guillen* to grant summary judgment to ISMIE on count II of its amended complaint. In that count, ISMIE alleged it had no indemnity obligation in connection with the settlement because Dr. Pergament was never "legally obligated to pay" anything under the terms of the settlement agreement; rather, his only obligation under the settlement was to assign his rights under the ISMIE policy to the Kessels.

¶ 107   ISMIE argued (and the trial court agreed) that this situation was governed by *Guillen*, which held that *where the insurer has breached its duty to defend*, the insured is entitled to a liberal construction of the "legally obligated to pay" policy language. *Guillen*, 203 Ill. 2d at 161. Thus, the breaching insurer in *Guillen* could not avoid indemnity by arguing that the insureds were not "legally obligated to pay" a settlement amount, notwithstanding that the settlement payment was to be satisfied by an assignment of the insureds' rights against the insurer. *Id.* at 161-62.

¶ 108   The circuit court relied on *Guillen* to conclude that, since ISMIE did not breach its duty to defend, Dr. Pergament was not entitled to a liberal construction of the policy's "legally obligated to pay" language. Instead, the court applied the "unambiguous" policy language as written. As the settlement with the Kessels was explicit that Dr. Pergament would not pay anything, the court found ISMIE owed no indemnity obligation to Dr. Pergament or to his assignees, the Kessels.

¶ 109   In challenging this conclusion, defendants do not dispute that the plain language of the settlement agreement did not obligate Dr. Pergament to pay anyone. Indeed, it explicitly stated

that the settlement amount was to be satisfied by his assignment to the Kessels of his rights under the ISMIE policy, "regardless of whether the [Kessels] are able to collect the Settlement Payment from the ISMIE policy or ISMIE." That assignment "finally and fully discharge[d]" Dr. Pergament "from any obligation to pay the Settlement Payment." Nor do defendants suggest that there was any ambiguity in the policy language limiting ISMIE's indemnity obligation to amounts that Dr. Pergament became "legally obligated to pay."

¶ 110  Instead, defendants' claim of error is that the circuit court erred in applying *Guillen*, because it failed to recognize that ISMIE breached the insurance policy. Because ISMIE breached, defendants argue that under *Guillen* they were "entitled to have the 'legally obligated to pay' language in ISMIE's policy liberally construed in their favor."

¶ 111  Again, we note defendants do not claim that ISMIE breached its duty to defend, as was the case in *Guillen*. Rather, they appear to be arguing that *Guillen*'s reasoning entitles them to a liberal construction of the policy language, because ISMIE (allegedly) breached by sending the December 2016 letter denying it had a duty to indemnify Dr. Pergament.

¶ 112  Defendants' argument is without merit for multiple reasons.

¶ 113  First, we emphasize that *Guillen* is clearly distinguishable in two respects. Notably, in *Guillen*, the settlement agreement entered into by the insureds (the Ortizes) specified that the insureds actually had a payment obligation, notwithstanding the assignment. *Id.* at 161 (The "Ortizes agreed to pay Guillen the sum of $600,000 to be paid solely from an assignment of the Ortizes' rights against Potomac given to Guillen. Technically speaking, the assignment did not release the Ortizes[ ] from their obligation to pay Guillen $600,000. *** The assignment did not negate the payment obligation itself."). In contrast, the settlement entered between the Kessels and Dr. Pergament was unequivocal that by assigning his rights under his policy with ISMIE, Dr.

Pergament was relieved of any possible payment obligation. Indeed, the agreement specified that "under no circumstances" would Dr. Pergament have any obligation beyond the assignment, "regardless of whether" the Kessels were ultimately able to collect anything from ISMIE.

¶ 114   More importantly, the *Guillen* court was clearly motivated by the insurer's breach of the *duty to defend*. Our supreme court held "that a liberal construction of the words 'legally obligated to pay' in favor of the insured is appropriate" when the insurer breached the duty to defend. *Id.* In *Guillen*, the insurer had breached its duty because it simply refused to defend, without either defending under a reservation of rights or filing a declaratory judgment action. See *id.* at 144. That is, the insurer in *Guillen* failed to take either of the "two options" an insurer must take to preserve its right to assert policy defenses to coverage. See *Ehlco*, 186 Ill. 2d at 150-51. In contrast, there is no dispute that ISMIE did *not* breach its duty to defend Dr. Pergament. Rather, it defended him under a reservation of rights. Thus, the reason the *Guillen* court applied a "liberal construction" to the policy is simply absent from this case.

¶ 115   Nevertheless, defendants suggest that they are entitled to a liberal reading of the policy, because ISMIE otherwise "breached" the policy by sending the December 2016 letter, in which it stated that: "At this time, [ISMIE] continues to defend Dr. Pergament under a Reservation of Rights and denie[d] that it has a duty to provide indemnification on behalf of Dr. Pergament." However, as discussed above (*supra* ¶ 103), the December 2016 letter could not be a breach of the duty to indemnify, especially as there was not yet any finding of liability.

¶ 116   In turn, defendants were not entitled to a liberal construction of the policy language limiting ISMIE's indemnity obligation to sums that Dr. Pergament became "legally obligated to pay." Rather, the trial court correctly determined that this language should be enforced as written. See *Miecinski*, 2024 IL App (1st) 230193, ¶ 24 ("Where the policy terms are clear and unambiguous,

we will give them their plain and ordinary meaning."). There is no question that the settlement agreement in the underlying lawsuit did not make Dr. Pergament "legally obligated to pay" anything in connection with that lawsuit. Thus, ISMIE did not owe Dr. Pergament coverage for the settlement. In turn, the Kessels (in their capacity as assignees of Dr. Pergament's rights under the policy) also were not entitled to indemnity from ISMIE.

¶ 117   Accordingly, we agree with the trial court that ISMIE was entitled to summary judgment on count II of its first amended complaint.

¶ 118   As we affirm entry of summary judgment in favor of ISMIE on count II, we find (as did the trial court) that there is no need to address the merits of count III, in which ISMIE alternatively argued that the settlement was unreasonable. Even assuming *arguendo* that the settlement agreement was otherwise reasonable, its express terms did not make Dr. Pergament "legally obligated to pay" any part of it, such that ISMIE had no indemnity obligation.

¶ 119   The Court Properly Entered Summary Judgment in Favor of ISMIE on Both Counts

of Defendants' Counterclaim

¶ 120   The foregoing analysis also leads us to reject defendants' contentions that the trial court erred in finding ISMIE was entitled to summary judgment on count I and II of defendants' counterclaim.

¶ 121   Count I of defendants' counterclaim sought a declaratory judgment that ISMIE was obligated to indemnify Dr. Pergament for the settlement amount. This claims fails in light of our reasoning as to why ISMIE was entitled to summary judgment on count II of its amended complaint. As discussed above, there is no dispute that the settlement agreement did not make Dr. Pergament "legally obligated to pay" anything. And because ISMIE did not breach its duty to

defend, its insured (Dr. Pergament) was not entitled to a liberal construction of that phrase pursuant to *Guillen.*

¶ 122   We also affirm the entry of summary judgment in ISMIE's favor with respect to count II of the defendants' counterclaim, which alleged violation of section 155 of the Insurance Code. That section provides:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> > (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> >
> > (b) $60,000;
> >
> > (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 2022).

¶ 123 Section 155 "provides an extracontractual remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Nine Group II, LLC v. Liberty*

*International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 39. "The key question in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable." *Id.* ¶ 41. "Section 155 costs and sanctions are inappropriate when a *bona fide* dispute regarding coverage exists." *Id.* ¶ 44.

¶ 124   In their cross-motion for summary judgment, defendants urged there was no genuine issue of material fact that ISMIE's "refusal to indemnify" Dr. Pergament in the December 2016 letter was vexatious and unreasonable. However, as discussed above, ISMIE did not breach its duty to defend or indemnify.

¶ 125   Nor can we say that the December 2016 letter was otherwise vexatious or unreasonable. In this regard, defendants argue there was "no bonafide coverage dispute that provided a basis for ISMIE to deny its obligation to indemnify [Dr. Pergament] for his conduct in handling the Kessels as their individual treating geneticist." They again suggest that the December 2016 letter was an improper reversal of ISMIE's prior statements in the November 2010 and October 2016 letters that it would indemnify Dr. Pergament, if he was found liable for "for [his] medical care and treatments rendered to the patient as a medical geneticist."

¶ 126   As discussed, the December 2016 letter did not reverse or repudiate any part of ISMIE's prior reservation of rights letters. In fact, it was consistent with those prior letters, which cited the policy language excluding coverage for management or entrepreneurial activities and informed Dr. Pergament that it would "not provide indemnity for injuries due to liability for any of your management activities involving any business that is not insured under the policy." In denying that it had a duty to provide indemnity "at this time," the December 2016 letter reflected ISMIE's belief that even if Dr. Pergament were found liable, such liability would be excluded from coverage as stemming from his management or entrepreneurial activities involving NRG or MDPC, noninsured entities.

¶ 127    To be clear, we need not decide whether ISMIE would have been able to successfully rely on the "management or entrepreneurial" policy exclusion to avoid indemnity coverage, had Dr. Pergament ever been required to pay anything in the underlying lawsuit. As he was never "legally obligated to pay" anything for his release from the underlying lawsuit, there was no such indemnity liability. Moreover, the existence of a *bona fide* dispute as to coverage precludes ISMIE's liability under section 155. See *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 32 ("Where an insurer reasonably relie[s] upon evidence sufficient to form a *bona fide* dispute, that insurer has not acted unreasonably or vexatiously under section 155." (Internal quotation marks omitted.)). Here, there was a *bona fide* dispute, and ISMIE permissibly defended the action under a reservation of rights. In turn, we agree with the trial court that defendants could not establish "vexatious or unreasonable conduct" by ISMIE within the meaning of section 155. Thus, we affirm the entry of summary judgment in ISMIE's favor with respect to count II of the counterclaim.

¶ 128    Before concluding, we wish to acknowledge that this decision is a harsh result for the Kessels, who might otherwise have been able to prove their underlying allegations. However, given the plain language of the ISMIE policy and the settlement agreement, we must affirm the entry of summary judgment in ISMIE's favor. Unfortunately for the Kessels, the settlement agreement they executed makes absolutely clear that it does not make Dr. Pergament "legally obligated to pay" anything, which is dispositive.

¶ 129    In negotiating the settlement, the Kessels' counsel apparently erred in assuming that the Kessels could obtain the settlement amount from ISMIE as Dr. Pergament's assignees. Thus, the Kessels agreed to fully release Dr. Pergament in exchange for the assignment of his rights under the policy. The Kessels' counsel apparently did not foresee that by explicitly relieving Dr.

Pergament of *any* payment obligation, the agreement also extinguished ISMIE's indemnity obligation under the policy's "legally obligated to pay" language. Perhaps counsel erroneously believed that *Guillen* called for a liberal construction of that policy language, notwithstanding that ISMIE did not breach its duty to defend, as was the case in *Guillen*. This apparent oversight clearly harmed the Kessels, as it leaves them without recourse against either Dr. Pergament or ISMIE, even if their underlying negligence claims were meritorious. However, we are constrained by the unambiguous language of the policy and the settlement agreement that the parties entered into.

¶ 130                                CONCLUSION

¶ 131  In summary, we find the trial court correctly entered summary judgment in favor of ISMIE on count II of its first amended complaint. That is, ISMIE owed no indemnity obligation for the settlement of the underlying lawsuit because Dr. Pergament was not "legally obligated to pay" anything under the terms of the settlement. We also conclude the trial court properly denied defendants' cross-motion on its counterclaim, and we affirm the entry of summary judgment in ISMIE's favor regarding counts I and II of the counterclaim.

¶ 132  For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 133  Affirmed.

*ISMIE Mutual Insurance Co. v. Pergament*, **2025 IL App (1st) 230787**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-CH-11983; the Hon. Joel Chupack, Judge, presiding. |
| **Attorneys for Appellant:** | Joel F. Handler, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Krista R. Frick, of Cunningham, Meyer & Vedrine, P.C., and James J. Stamos, of Stamos & Trucco, LLP, both of Chicago, for appellee. |